[No. 11859. Department Two. July 3, 1914.]

## In the Matter of the Guardianship of MARTHA E. BAYER, Incompetent.[1]

INSANE PERSONS—GUARDIANSHIP—ACCOUNTING—EXPENSES — ADDITIONAL ATTORNEYS—NECESSITY. A guardian is not warranted in employing special counsel to defend proceedings for his removal, or to establish the ward's sanity, or to meet objections to his final account, where the issues were not complicated and the general counsel of the guardian was fully able to handle the matters, no necessity for additional counsel being shown.

SAME—EXPENDITURES—APPEAL—FINDINGS. Findings as to necessary traveling expenses of a guardian will not be disturbed on appeal where the lower court was in a better position than the appellate court to try the fact, and the findings do not appear to be contrary to the preponderance of the evidence.

INSANE PERSONS—GUARDIANSHIP — TERMINATION — DISCHARGE OF GUARDIAN—DEBTS. Where an insane ward is found to be competent, she is entitled to the immediate full control of both her person and estate, under Rem. & Bal. Code, § 1671, and it is proper to discharge the guardian, making proper provision for the payment of unpaid debts or matters involving the striking of a balance between the guardian and ward, without making provision for the payment of debts and expenses of the guardian from the property then in his hands.

GUARDIAN AND WARD—ACCOUNTING—EXPENSES AND ALLOWANCES—APPEAL—REVIEW. On appeal by a ward, from allowances to the guardian on final settlement, for personal expenses and expenditures involving the welfare of the ward, the supreme court will defer to the judgment of the lower court, where it was familiar with the local situation, had a great deal to do with the proceedings, and could know what was proper in determining the justness of the claims.

Cross-appeals from a judgment of the superior court for King county, Frater, J., entered July 28, 1913, settling a guardian's account, after a hearing before the court on the merits. Affirmed.

*James R. Chambers*, for appellant.

*James B. Murphy*, for respondent.

[1]Reported in 141 Pac. 682.

MORRIS, J.—This appeal attacks the correctness of the lower court's judgment in settling the accounts of the guardian in caring for the person and estate of the ward, covering a period of over four years, and involving four reports and one supplemental report.

Martha E. Bayer was declared to be an incompetent on December 31, 1908, and J. N. Dotson, a brother, was appointed guardian of her person and estate. For about a year, Mrs. Bayer was kept in her home in the Green Lake district of Seattle. She was then confined in a private sanitarium for about a year and a half, when she was taken to the home of the guardian in Cashmere, where she remained fourteen months. She was then confined for a short time in one of the state hospitals for the insane, from which she was discharged November 30, 1912. The first report filed by the guardian carried his account up to March 31, 1910, and shows the receipt of $4,780.76, and the expenditure of various sums on behalf of the person and estate of the ward, amounting to $3,209.28. Upon the filing of this report, the court appointed John Arthur, a member of the Seattle bar, to investigate the account on behalf of the ward and to report his conclusions. This report was favorable, and on April 16, 1910, this report was, in all things, approved and allowed.

In February, 1912, the guardian filed a second report, showing further receipts amounting to $2,690.51, and further expenditures amounting to $1,132.75. In December, 1912, a third report was filed, and on January 8, 1913, the guardian filed his final report, followed by a supplemental report in July, 1913. Mrs. Bayer filed objections to these reports in February, 1913, asking that the order approving the first report be annulled and that the same be reconsidered. In her petition, she attacks various items in this report under what is known in the record as division 1. In division 2, she attacks the report of February, 1912. In division 3, the report of December, 1912. In division 4, she makes complaint of certain acts of the guardian in relation to a piece of real

estate in Lincoln county, by reason of which she claims to have been damaged in the sum of $2,250. In division 5, she attacks the acts of the guardian in defending certain proceedings brought by her to establish her competency, and claims that, by so doing, her estate was damaged to the extent of $2,000. In due time, these matters came on to be heard, and the lower court entered judgment approving and allowing the first report in all things, to which Mrs. Bayer takes exception. The second report was approved and allowed, save an item of $250 paid out by the guardian as attorney's fees, to which both parties take exception; the guardian, to the disallowance of the attorney's fee; and Mrs. Bayer, to the approval and allowance of the remaining items of the report. The third report was allowed, save another attorney's fee of $125 and the disallowance of $300 upon the personal expense account of the guardian; he excepting to the disallowance of these two items, and Mrs. Bayer excepting to the allowance of the remaining items. The lower court denied the exceptions referred to in divisions 4 and 5 of Mrs. Bayer's objections, to which she takes exception. Certain allowances and disallowances are made in the supplemental report, to which both parties take exceptions. In the supplemental report, an item of $300 attorney's fee to Hugh M. Caldwell as attorney for the guardian is disallowed, to which the guardian excepts. The guardian is denied compensation for his services upon the ground that his charges and expenditures as guardian are excessive, to which the guardian excepts. The court then finds that the estate of the ward is indebted to the guardian for moneys spent and obligations incurred in the administration of the estate, including allowances made and approved by the court, in the sum of $3,-148.13, upon which a credit of $1,816.92 is given, representing the value of a wheat crop sold by the guardian and which the guardian is directed to apply in payment of the ward, and a judgment is then given against Mrs. Bayer for $1,-313.21. To this portion of the judgment, both parties ex-

cept. The guardianship is then terminated and the guardian directed to turn over certain property to Mrs. Bayer, to which he excepts.

To go fully into these various exceptions would be to write a small book. Counsel for the various parties have filed briefs and abstracts covering over 800 pages; and while the fact that the case is burdensome does not lessen the duty of the court to carefully examine each assignment of error and give to it such consideration as its merits demand, the court cannot be expected to discuss these assignments separately, nor to voice all the considerations which enter into the conclusions we have reached. Each party moves to dismiss the other's appeal. We content ourselves with denying both motions without further reference to the grounds upon which the respective motions are based, and proceed to the merits of the appeals.

First, we will take up the case as presented by the guardian. Certain brothers and sisters of the ward and the guardian commenced a proceeding in the superior court of King county to remove the guardian, complaining that the ward was not being properly cared for nor her estate properly administered. In defense of these proceedings, the guardian retained Morris & Shipley, of the Seattle bar, and paid them $250 for their services. The lower court refused to allow this payment against the estate of the ward, upon the ground that Mr. Murphy, general counsel for the guardian, was fully able to handle the matter, and that no necessity was shown for the employment of additional counsel. We agree with the lower court in both its ruling and the reasoning upon which it is based. So far as the issues of fact or law are concerned, they presented nothing complicated demanding any assistance from outside counsel.

Objection is also made to the refusal of the court to allow J. P. Wall, of the Seattle bar, an attorney fee of $125, for services rendered the guardian in contesting the proceedings in which the ward sought to have her competency and sanity

established. What has been said as to the previous objection
applies to this, and the ruling is sustained. So as to the claim
of Hugh M. Caldwell, of the Seattle bar, for personal services
on the hearing of the final account. If the guardian desired
the services of other attorneys than the regular counsel in
meeting the objections to his account made by the ward, he
cannot subject the estate to the payment of such attorney
fees without a further showing of necessity than appears
here.

Objection is made to a reduction of the personal and
traveling expenses of the guardian from $670.97 to $300.
The items embraced in this claim cover trips from Cash-
mere to Seattle and from Cashmere to Sprague, which
the guardian claims he necessarily made for the bene-
fit of the ward or her estate. Included, also, in this
item is the expense of taking the ward to and from
Cashmere. The guardian should be allowed all necessary
expenses in caring for the ward's person and estate, but the
lower court, who had charge of this estate and was famil-
iar with the necessities of the situation by reason of his per-
sonal contact with and knowledge of the guardian and ward,
knew what expenditures the reasonable and proper care of
the person and estate of the ward demanded, and is in a much
better situation to try a fact of this character than we are
from the record alone. His judgment should therefore be fol-
lowed, unless it appears that such judgment is contrary to
the preponderance of the evidence and not made with due
consideration of all the pertinent facts. We find nothing to
so indicate, and believing the lower court's judgment in a
matter of this kind is better than ours, we accept it.

A like objection is made to the reduction of another travel-
ing expense claim from $191 to $97.05. We make the same
disposition of this objection as of the previous one, and for
the same reason.

The next objection is to the order of the lower court term-
inating the guardianship and discharging the guardian, in-

cluding the orders incidental thereto as to the disposition of the ward's property then in the hands of the guardian, without making provision for the payment of debts and expenses of the guardian. The court having found that the ward was sane and competent, she was entitled to the immediate full control of both her person and estate, under Rem. & Bal. Code, § 1671 (P. C. 409 § 781). The lower court, though determining a matter usually heard on the probate side of the court, was still sitting as a superior court of general jurisdiction, with ample power to make and enforce any decree or judgment proper in the premises. For this reason, following the plain mandate of the statute, it is better to terminate the guardianship proceeding when the ward is found fully competent to care for and manage her person and estate, making proper provision for the payment of any unpaid debts or matters involving the striking of a balance between the guardian and ward.

The next three assignments may be treated together, as they all go to the failure of the court to grant allowances to the guardian. These objections are disposed of by what has already been said, and we refrain from further comment.

We next take up the exceptions of the ward to the judgment entered, and these are mainly to the failure of the court to allow objections offered by the ward to the various expenditures made by the guardian as shown in his various reports, and involves the allowances for nurses for the ward while she was at the Green Lake home, the bills for the maintenance of the home, the charges while the ward was confined in a private sanitarium, the personal expenses of the guardian, and allowances made to the guardian in the action brought by the brothers and sisters and in the insanity proceedings. In these matters, as in the disallowance to the guardian, we must defer largely to the opinion of the lower court, who was familiar with the local situation, had a great deal to do with these proceedings, and could know what was proper in determining the justness of these various claims.

The two proceedings referred to involved, to some extent, the welfare of the ward, and to that extent it was proper to charge the estate with at least a share of the cost and expenses; and inasmuch as the lower court heard these proceedings, we prefer his judgment to our own in determining to what extent he should allow the guardian's claims.

As to the objections presented by divisions 4 and 5, we shall say but little, and not attempt to pass upon the point suggested as to whether or not the accounting as to the Lincoln county lands and wheat crops, or the character of the land as to whether it was community or separate property, should be raised in this proceeding or some other. So far as the character of the land is concerned, this question is made the issue in a pending action which we will doubtless have to pass upon soon, and we prefer determining that question, if we must, upon a record presenting that question alone, devoid of any jurisdictional questions.

As to the acts of the guardian, we are satisfied, as was the lower court, that, in treating the Lincoln county property as he did and in all his relations to it, he was acting in good faith and according to the best information he had.

Objection 5, as previously said, goes to the action of the guardian in contesting the proceeding brought by the ward to establish her competency. The extent to which a guardian is justified in contesting such proceedings must largely depend upon the peculiar circumstances of each case, and from this record we concur in the conclusion reached by the lower court.

These observations dispose of the various contentions of the parties. In view of the conclusions we have reached, neither party will recover costs in this court, and the judgment is affirmed.

CROW, C. J., PARKER, MOUNT, and FULLERTON, JJ., concur.